UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HOLCOMB and ROTOCO, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | Case No.: 18cv475 JM (BGS)<br><br>**ORDER ON PLAINTIFFS' MOTION FOR PAYMENT OF ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS AND EXPENSES** |

Plaintiffs James Holcomb and Rotoco, Inc. ("Plaintiffs") move for $129,804.96 in attorney's fees and costs pursuant to the Song-Beverly Consumer Warranty Act ("the Song-Beverly Act"), CAL. CIV. CODE. § 1794(d). (Doc. No. 44.) The motion has been briefed and the court finds it suitable for submission without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the below reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

Plaintiffs leased and then purchased a 2014 BMW M6 ("the vehicle") on October 6, 2014 and October 12, 2017, respectively. The vehicle began exhibiting various problems with its steering wheel, windows, fuel filler neck, carbon canister, and warning lights. Plaintiffs brought the vehicle to Defendant's repair facility at least eight times for warranty-

related repairs, which were unsuccessful. On January 19, 2018, Plaintiffs filed the instant action in state court. The action was timely removed to federal court. On June 4, 2019, the parties filed a notice of settlement. (Doc. Nos. 28-29.) The parties finalized the settlement agreement and subsequently filed a joint motion to dismiss with prejudice. (Doc. No. 40.) The court granted the motion and agreed to retain jurisdiction for the purpose of hearing Plaintiffs' motion for attorney's fees and costs. (Doc. No. 43.)

## II. LEGAL STANDARD

A buyer who prevails in an action under the Song-Beverly Act is entitled to an award of attorney's fees and costs "based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." CAL. CIV. CODE § 1794(d). The court must determine "whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994). "In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007). The method of calculating fees is determined by state law. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

The lodestar method is the prevailing method for calculating attorney's fees. *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 818-19 (2006); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135 (2001). In calculating the lodestar, the court must "'make an initial determination of the actual time expended; and then . . . . ascertain whether under all the circumstances of the case the amount of the actual time expended and the monetary charge being made for the time expended are reasonable.'" *Robertson*, 144 Cal. App. 4th at 817 (quoting *Nightingale*, 31 Cal. App. 4th at 104). In determining the reasonableness of the lodestar, courts can consider the complexity of the case, procedural demands, the skill exhibited, and the results achieved. *Id.*

The plaintiff bears the burden of demonstrating that fees sought were allowable, reasonably necessary to the conduct of the litigation, and reasonable in amount. *Karapetian v. Kia Motors Am., Inc.*, 970 F. Supp. 2d 1032, 1036 (C.D. Cal. 2013). If the reasonableness of fees is challenged, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Assoc.*, 163 Cal. App. 4th at 550, 564 (2008). In such cases, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("The party opposing the fee award can be expected to identify the particular charges it considers objectionable"). Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998). The court may also draw on its own experience in determining what constitutes a reasonable rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (holding that "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees").

### III. DISCUSSION

As the prevailing party in a Song-Beverly Act claim, Plaintiffs are entitled to an award of fees and costs. *See* CAL. CIV. CODE § 1794(d). Plaintiffs seek $129,804.96 in attorney's fees and costs. (Doc. No. 44-2.) Detailed billing records provided by Plaintiffs' counsel show the $129,804.96 in fees and costs consists of the following: (1) $80,066.50 for 170.1 hours of work by ten attorneys at rates between $355 and $665 per hour; (2) $8,396 for 42.4 hours of work by paralegals or law clerks at a rate of $195 per hour; (3) $797.50 for 5.5 hours of work by legal assistants at a rate of $145 per hour; (4) $13,766.96 in costs; and (5) an additional $26,778 based on a 0.3 multiplier. (Doc. No. 44-2.) Defendant does not dispute that Plaintiffs are entitled to attorney's fees and costs, but argues the amount requested is unreasonable. (Doc. No. 45.)

///

///

## A. Attorney's Fees and Hours

As noted above, Plaintiffs seek $80,066.50 for 170.1 hours of work by ten attorneys at rates between $355 and $665 per hour. (Doc. No. 44-4 at 2-4.) The rates and hours for each attorney by year is as follows:

| Attorney | 2018 Hrs | 2018 Rate | 2018 Total | 2019 Hrs | 2019 Rate | 2019 Total | Total Hrs | Total Bill |
|---|---|---|---|---|---|---|---|---|
| Bickel | 0.1 | $655 | $66 | 5.3 | $665 | $3,525 | 5.4 | $3,590 |
| Sannipoli* | 0.2 | $425 | $85 | 37.3 | $465 | $17,345 | 37.5 | $17,430 |
| Solis | 3.7 | $425 | $1,573 | | | | 3.7 | $1,573 |
| Nemeth | 71.7 | $495 | $35,492 | 11.4 | $525 | $5,985 | 83.1 | $41,477 |
| McGaffey | | | | 13.7 | $415 | $5,686 | 13.7 | $5,686 |
| Lynch | 2.7 | $365 | $986 | | | | 2.7 | $986 |
| Myers | 0.5 | $365 | $183 | | | | 0.5 | $183 |
| Wagner | 5.4 | $425 | $2,295 | | | | 5.4 | $2,295 |
| Pengilley | 5 | $425 | $2,125 | | | | 5 | $2,125 |
| Goolsby | | | | 3.7 | $375 | $1,388 | 3.7 | $1,388 |
| *Also billed 9.4 hours at $355 per hour in 2017 for a total of $3,337 | | | | | | **TOTAL** | **170.1** | **$80,066.50** |

### 1. Number of Attorneys

At the outset, the reasonableness of Plaintiffs' attorneys' fees is questionable given the number of experienced attorneys who purportedly worked on this case. As acknowledged by Plaintiffs, Plaintiffs' counsel's firm employs a total of ten attorneys practicing exclusively in the "niche market" of Song-Beverly Act cases. (Doc. No. 44-1 at 16.) Plaintiffs' attorneys "routinely litigate these types of cases." (Doc. No. 44-2 at 3.) Their firm is among the largest firms in California, if not the largest firm, practicing exclusively in this area of law. (Doc. No. 44-1 at 16.) Plaintiffs do not explain why this case required the attention of an entire large and specialized law firm. For example, Plaintiffs do not argue this case was complex. Plaintiffs do not claim that each of the attorneys specializes in a particular phase of litigation. To the contrary, the biographies provided by Plaintiffs highlight each attorney's impressive experience handling these types of cases, including bringing cases to trial. (Doc. No. 44-2 at 9-11.) Although in two recent cases, courts did not fault the plaintiff for utilizing a similar number of attorneys, those cases involved two different law firms, one of which was later associated for trial purposes,

and both cases were settled after extensive trial preparations. *See Hamm v. FCA US LLC*, No. 17cv577 AJB (BGS), 2019 WL 3891139, at *3 (S.D. Cal. Aug. 19, 2019) (in case that settled the day of trial, awarding fees to 12 attorneys at two firms for 150 hours of work); *Petropoulos v. FCA US LLC*, No. 17cv398 W (KSC), 2019 WL 2289399, at *2-3 (S.D. Cal. May 29, 2019) (in a case that was litigated for over two years, awarding fees for 11 attorneys at two firms). The parties here filed a notice of settlement over a month before trial. Plaintiffs' counsel's billing records contain only one reference to trial preparation. (*See* Doc. No. 44-3 at 17 (noting that on January 16, 2019, counsel discussed "trial and case strategy" for less than 45 minutes).

      As recognized by other courts, reliance on multiple attorneys necessarily requires each attorney to get "up-to-speed" on the case. *Luna v. FCA US LLC*, No. 2:17cv8272 ODW (RAO), 2020 WL 491462, at *4 (C.D. Cal. Jan. 30, 2020) (imposing 10% across-the-board cut because "[a]s a result of having twelve attorneys from two firms billing on this matter, the billing records are riddled with duplicative inter-office communications and entries reviewing prior filings and case materials"); *Base v. FCA US LLC*, No. 17cv1532 JCS, 2020 WL 363006, at *3 (N.D. Cal. Jan. 22, 2020) (noting that significant billings for meetings between attorneys was "one of the potential inefficiencies of using a large number of attorneys to staff a case"); *Durham v. FCA US LLC*, No. 2:17cv596 JLT, 2020 WL 243115, at *5 (E.D. Cal. Jan. 16, 2020) (noting a "significant amount of time spent on the preparation of internal memorandums and summaries for co-counsel"). Based on the above, the expertise and experience of Plaintiffs' counsel, upon which Plaintiffs rely to justify their high rates, is therefore uncertain given that it took ten of them, along with multiple paralegals and assistants, to handle this single unextraordinary case. Other Song-Beverly Act cases, albeit ones settling prior to any significant discovery, have required far fewer attorneys. *See Chavez v. Jaguar Land Rover N. Am., LLC*, No. 18cv2811 W (JLB), 2020 WL 376209, at *2 (S.D. Cal. Jan. 23, 2020) (awarding fees to five attorneys at Plaintiffs' counsel's firm for a total of 43.6 hours of work); *Anderson v. BMW of N. Am.,*

5

*LLC*, No. 18cv57 WVG, 2018 WL 2011006, at *2 (S.D. Cal. Apr. 30, 2018) (awarding fees to one attorney for 40 hours of work).

The court is not in a position, however, to determine the appropriate number of attorneys assigned to this particular case given that it is not privy to the inner workings of Plaintiffs' counsel's law firm. Also, for better or worse, the use of a large number of attorneys in Song-Beverly Act cases appears relatively common. *See Ortega v. BMW of N. Am., LLC*, No. 2:18cv6637 R (SK), 2019 WL 6792798, at *3 (C.D. Cal. Oct. 24, 2019) (noting that defendant used 15 attorneys and that is was "not uncommon" to use a large number of attorneys in lemon law cases). On their face, the billing records do not show that a significant amount of time was unreasonably spent getting ten attorneys up-to-speed on this case. *Id.* ("This Court declines to admonish the use of a larger number of attorneys, as it appears there was no duplicative billing[.]"). As discussed below, this case involved extensive discovery and there is no obvious indication that a fewer number of attorneys would have generated significantly fewer hours. The efficiency gained from specializing in these types of cases may have allowed Plaintiffs' attorneys to familiarize themselves with this case with minimal effort. Finally, Plaintiffs' counsel submitted a declaration, under the penalty of perjury, that all fees were entered contemporaneously, were not adjusted upward, and were not duplicative, redundant, or unnecessary. (Doc. No. 44-2 at 2, 12.) The court has no compelling reason to doubt the honesty or judgment of Plaintiffs' counsel regarding the number of attorneys necessary to litigate this case.

### 2. Number of Hours Billed

The reasonableness of Plaintiffs' request for attorney's fees is also somewhat questionable given the number of hours it took to complete discovery and settle this case before any significant trial preparation was required. In *Hamm*, for example, the attorneys billed 150 hours for a case that settled on the day of trial. 2019 WL 3891139, at *4. In *Petropoulos*, attorneys billed 146 hours for a case that settled after over two years of "aggressive" litigation. 2019 WL 2289399, at *2-3; *see also Pollard v. FCA US LLC*, No. 17cv591 JLS (JCG), 2020 WL 57270, at *5 (C.D. Cal. Jan. 3, 2020) (requesting 150 hours

in a case that was being prepared for trial, including motions in limine). In contrast, Plaintiffs' counsel billed 170.1 hours after litigating the case for about 16 months and prior to requiring any trial preparation.[1] While Plaintiffs' counsel should not be penalized for choosing to specialize in Song-Beverly Act cases, the need for this amount of work is uncertain given Plaintiffs' counsel's admission that "our office has developed forms and other streamlining techniques in an effort to shorten the time required of particular tasks." (Doc. No. 44-2 at 3.) Again, Plaintiffs do not attempt to distinguish the instant case from cases that were settled using fewer attorneys with lesser expertise in a shorter amount of time.[2]

As discussed below, however, as least ten of the 170.1 hours billed were excessive. Morever, the court cannot determine with any certainty that roughly 160 hours billed for the instant case is unreasonable. *See, e.g., Base*, 2020 WL 363006, at *3 (finding that approximately 200 hours for a total of $75,000 was reasonable where the parties settled while preparing for trial). Over the course of fifteen months, counsel for Plaintiffs: (1) removed the case from state court; (2) filed an answer; (3) attended an early neutral evaluation and case management conference; (4) moved to amend the scheduling order; (5) designated expert witnesses; (6) attended a mandatory settlement conference; and (7) settled the case and reduced the settlement agreement to writing. Plaintiffs also state, and Defendant does not dispute, that the parties participated in eleven depositions, including expert depositions. (Doc. No. 44-1.) Defendant served written discovery requests that

---

[1] For reasons that are unclear, in the declaration supporting Plaintiffs' motion, Plaintiffs' counsel states that his office spent over 200 hours litigating this case. (Doc. No. 44-2 at 26 ¶ 64.)

[2] The total attorney's fees requested – $80,066.50 – is also questionable based on some decisions by other courts. *See, e.g.*, *Luna*, 2020 WL 491462, at *6 (after imposing reductions, awarding $55,062 in fees and costs to twelve attorneys who exchanged written discovery, conducted depositions, and prepared pretrial documents); *Pollard*, 2020 WL 57270, at *5 (after imposing reductions, awarding $47,000 in attorney's fees).

included 50 interrogatories, 49 requests for admission, and 51 categories of document production. (Doc. No. 44-2 at 5.) In response to Plaintiffs' request for production, Defendant produced over 300 pages of documents. (*Id.*) This is not an insignificant amount of discovery and litigation. The court cannot confidently conclude, especially in light of the detailed and voluminous billing records provided by Plaintiffs, that this amount of activity did not reasonably occupy 160 hours.

### 3. Attorney Rates

With respect to the rates charged by Plaintiffs' counsel, Plaintiffs cite no published case upholding a fee greater than $575 per hour.[3] (Doc. No. 44-1 at 18-19 (citing *Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 474 (Ct. App. 2016).) A maximum fee of $575 per hour is consistent with what other judges on this court have found reasonable. *See Hamm*, 2019 WL 3891139, at *4 (finding that $575 was unnecessarily high and reducing it to $550, and finding that $375 for an attorney that had been barred for five years should be reduced to $350, but approving rates between $350 and $550); *Petropoulos*, 2019 WL 2289399, at *3 (approving fees ranging from $275 to $575); *Anderson*, 2018 WL 2011006, at *3 (finding a fee of $500 reasonable given the attorney's experience, the tasks completed, and others cases finding that $425 and $575 were reasonable); *see also Shaw v. Ford Motor Co.*, No. 5:18cv1169 JLS (KK), 2020 WL 57273, at *3 (C.D. Cal. Jan. 3, 2020) (approving rates between $200 and $550).

In support of their rates, Plaintiffs' counsel conducted an informal survey of seven attorneys outside of their firm practicing in this area of law throughout the state who purportedly charged between $600 and $650 per hour in 2015. (Doc. No. 44-1 at 12-13.) Plaintiffs also argue higher rates are justified because their attorneys took the instant case, like they do all their cases, on a contingency basis and thus bore the risk of loss. (Doc. No. 44-2 at 9.) Defendant responds by arguing (1) the survey conducted by Plaintiffs' counsel

---

[3] Plaintiffs cite, however, an Alameda County Superior Court case finding rates between $335 and $655 totaling $18,816 to be reasonable. (Doc. No. 44-2 at 16.)

8

was not supported by any study or expert testimony regarding rates in this geographic area, or by declarations from attorneys in this area, and (2) lower rates are in-line with rates charged for similarly-experienced consumer law attorneys practicing in this geographic area according to a "widely-cited and court approved" survey. (Doc. No. 45 at 10-15.)

Plaintiffs' counsel's willingness to take the case on a contingency basis, and to pay all costs, provides only minimal support for the reasonableness of charging higher rates. Nothing in the record suggests the risk of loss embraced by Plaintiffs' counsel's business for taking clients on a contingency fee basis is any greater than the risk of loss posed by requiring clients to pay costs. Plaintiffs' counsel's survey of other attorneys handling Song-Beverly Act cases also provides minimal support given that only one of the attorneys surveyed was based in this geographic area, and all had more experience than even the most experienced of Plaintiffs' counsel. Based on the above, Mr. Bickel's rate is reduced to $575. The remaining rates remain unchanged. The calculation for attorney's fees is therefore reduced from $80,066.50 to $79,582 based on the reduction to Mr. Bickel's rate, and is further reduced, as discussed below, based on the time spent in bringing the instant motion.

### B.     Paralegal and Legal Assistants' Work

Plaintiffs request $8,396 for 42.4 hours of work performed by seven paralegals or law clerks at a rate of $195 per hour.[4] (Doc. Nos. 44-1 at 18, 44-2 at 4.) In support of this request, Plaintiffs' counsel notes that each paralegal graduated with a certificate from an ABA-approved school or obtained a certificate upon passing the proper examination, and that each law clerk graduated from an ABA-approved law school. (Doc. No. 44-1 at 18.) Plaintiffs also cite an Alameda County Superior Court case purportedly upholding paralegal fees between $135 and $195 for Plaintiffs' counsel's firm. (Doc. No. 44-2 at 16.)

---

[4] By the court's calculation, 42.4 hours at $195 per hour equals $8,268, not $8,396.

9

Plaintiffs also request $797.50 for 5.5 hours of work by four legal assistants at a rate of $145 per hour. (Doc. Nos. 44-1 at 18, 44-2 at 4.)

Defendant argues (1) that 20.8 hours of the worked performed by paralegals, law clerks and legal assistants was purely clerical or secretarial and cannot be billed at hourly rates, and (2) Plaintiffs did not show that the $195 rate for paralegals and law clerks is reasonable based on the complexity and challenges of the tasks. (Doc. No. 45 at 9-10, 16.) Defendant contends that $100 is a reasonable rate for paralegal/law clerk work. (*Id.* at 12-13.)

As noted by the Supreme Court, certain types of paralegal work, such as drafting correspondence or fact investigation, "lies in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989). The Court also noted that "[o]f course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Id.* Under state law, courts have found it appropriate to bill separately for paralegal work "at a reasonable market value rate." *Guinn v. Dotson*, 23 Cal. App. 4th 262, 269 (1994) ("An award of attorney's fees which does not compensate for paralegal service time would not fully compensate the attorney.").

Courts in this district have approved paralegal fees, but not at $195 per hour. *See Hamm*, 2019 WL 3891139, at *3 (finding paralegal rate of $175 per hour excessive and reducing it to $75 per hour for 18.7 hours); *Petropoulos*, 2019 WL 2289399, at *3 (finding $175 per hour reasonable). Plaintiffs provide no evidence supporting the reasonableness of a $195 rate in this geographic area. *See Payne v. Bay Area Rapid Transit Dist.*, No. 08cv2098 WDB, 2009 WL 1626588, at *1 (N.D. Cal. June 5, 2009) ("To determine appropriate hourly rates, we look to rates prevailing in the [area] for similar services performed by attorneys of reasonably comparable skill, experience, and reputation. This standard also applies to the rates charged for work performed by paralegals and law clerks.") (internal citation omitted). Furthermore, much of the work billed at the $195 paralegal/law clerk rate is clerical or border-line clerical. Many of the entries are also

block-billed, making it impossible to separate legal from clerical tasks. For example, on April 11, 2018, Plaintiffs' counsel billed $97.50 for the following paralegal work:

> Receive and process phone call from chambers clerk regarding status of plaintiffs' early neutral evaluation statement. E-mail to Paralegal Angela Mason regarding same. Receive and process email from Paralegal Angela Mason with department e-mail address. Scan and e-mail Plaintiffs' Early Neutral Evaluation Statement and Plaintiffs' Initial Disclosures to chambers. Email to Attorney Tiffany Lynch and Laura Goolsby and note to file regarding same.

(Doc. No. 44-3 at 5.) Additionally, on October 12, 2018, Plaintiffs' counsel billed $253.50 for the following paralegal work:

> Scan and submit deposition subpoenas through One Legal for personal service . . . . Draft proofs of service. Serve Plaintiff's Notices of Depositions with copies of deposition subpoenas on opposing counsel via mail and email. Email to Attorney Nicole Nemeth and law clerk Keshav Nair and note to file regarding same.

(*Id.* at 12.) There are also numerous entries where paralegal/law clerks billed for "receiving and processing" e-mails, including e-mails on which the paralegal/law clerk was merely copied. For example, on September 20, 2018, Plaintiffs' counsel billed $19.50 for a paralegal to "[r]eceive and process e-mail response from Attorney Nicole Nemeth to client regarding client's inquiry regarding discovery process." (Doc. No. 44-3 at 10.) Because at least half of the paralegal/law clerk work was clerical or borderline clerical, the number of hours billed is reduced by 50% to 21.2 hours. Also, in line with other courts in this district, the paralegal/law clerk hourly rate is reduced from $195 to $100 per hour. The total amount of reasonable fees for paralegal/law clerk work is therefore $2,120. Furthermore, all the work performed by legal assistants was clerical, and Plaintiffs cite no authority supporting the reasonableness of awarding legal assistants' fees. Plaintiffs' request for $797.50 for work performed by legal assistants is therefore denied.

///
///
///

### C. Unnecessary or Overstated Entries

Defendant points out five specific instances of alleged unnecessary or overstated billing entries. (Doc. No. 45 at 17-18.) The court declines to reduce any of them. First, the court disagrees that the January 12, 2018 entry for 2.2 hours to receive and review documents, put together a litigation file, draft repair history summary, and begin drafting a complaint, (Doc. No. 44-3 at 3), is unreasonable. The entry is not necessarily duplicative based on a previous billing of 9.4 hours for case intake. Second, the court agrees the November 16, 2018 entry for 0.8 hours for a paralegal/law clerk to draft an amended notice of deposition and two subpoenas is unreasonable, especially given that no amended notice was sent, but declines to reduce the amount any further than the court already has. Third, the court disagrees that the April 26, 2019 entry for 0.6 hours to confer regarding notices of appearance, or the April 29, 2019 entry for three hours to review expert reports and depositions in preparation for a mandatory settlement conference, was unnecessary overlap. Finally, the court disagrees that 0.5 hours to attend a mandatory settlement disposition conference is unreasonable given that Defendant requested "judicial intervention" and the conference may have been held regardless of Plaintiff's alleged delay in finalizing the settlement.

### D. Fees Related to the Instant Motion

Plaintiffs include $20,291 in fees for 41.4 hours of work related to drafting and filing the instant motion. (Doc. Nos. 44-1 at 23, 44-3 at 22-23.) This includes an estimated 12 hours of time to review Defendant's opposition, draft a reply, and attend a motion hearing. (*Id.*) Defendant argues this is unreasonable, especially in light of Plaintiffs' counsel's experience. (Doc. No. 45 at 18.)

Fees related to the preparation and defense of a motion for attorney's fees are recoverable. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1141 (2001). The court agrees, however, that 41.4 hours in preparing the instant motion is excessive. Except for the amounts requested and the defendant's name, the instant motion is largely identical to a motion Plaintiffs' counsel previously filed with this court. *See* Motion for Attorney Fees, *Chavez*,

12

18cv475 JM (BGS)

No. 18cv2811 (S.D. Cal. Aug. 7, 2019); *see also Pollard*, 2020 WL 57270, at *5 (finding that 14.5 hours spent on a motion for attorney's fees under the Song-Beverly Act was unreasonable given that it was substantially identical to an earlier motion); *Johnson v. FCA US LLC*, No. 17cv0536 AJB (BGS), 2019 WL 3891148, at *3 (S.D. Cal. Aug. 19, 2019) (noting that a motion for attorney's fees is a "template-driven motion" and reducing a request for $6,252.50 to $2,000).

Plaintiffs' counsel's bills also show that a considerable amount of time was spent auditing the charges. While some review of Plaintiffs' counsel's detailed and lengthy billing statement is appropriate before filing the same before the court, it is unreasonable that Defendant should pay Plaintiffs' attorneys to confirm the accuracy of their own bills. *See Jameson v. Ford Motor Co.*, No. 18cv1952 ODW (AS), 2019 WL 6840758, at *3 (C.D. Cal. Dec. 16, 2019) (striking fees for "review and audit billing"). To the extent Plaintiffs claim the bills were reviewed for "excessive billing for reduction or removal," again, Defendant should not have to pay for time spent removing entries that Plaintiffs' counsel agree were excessive. Finally, even though there was no hearing on the instant motion, Plaintiffs' counsel billed for the estimated time spent "preparing for the motion hearing" and "traveling to and attending the hearing." (Doc. No. 44-3 at 22-23.) Because the records are block-billed, the actual amount of time spent auditing or removing excessive bills, or the time estimated to prepare for and attend a hearing, cannot be isolated. Accordingly, Plaintiffs are awarded $5,000 in attorney's fees for the time spent on the instant motion, which equals a reduction of $15,291.

### E. Block-Billing

Defendant argues that Plaintiffs' counsel's practice of "block-billing" warrants a reduction in fees. (Doc. No. 45 at 19.) Defendant alleges, and Plaintiffs do not dispute, that ten items on Plaintiffs' counsel's bill are block-billed. Defendant cites *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007), in which the Ninth Circuit upheld a district court's authority to reduce hours that are billed in block format. The court stated, however, that "block billing makes it more difficult to determine how much time was spent on

13

particular activities." In response, Plaintiffs cite *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1325 (2008), in which the court stated that block-billing was "not objectionable per se," but is nonetheless "a risky choice" that can exacerbate the vagueness of a request for attorney's fees.

With the exception of the items discussed above, the entries in Plaintiffs' counsel's billing records that Defendant identifies as blocked-billed all contain multiple specific tasks that, when combined, reasonably amount to the time billed. For example, on November 30, 2018, Plaintiffs' counsel billed 2.80 hours for preparing for a deposition of a technician at BMW San Diego, meeting and conferring with opposing counsel regarding a stipulation for an unavailable technician, e-mailing opposing counsel regarding the same, attending and taking the deposition of the technician, and returning to the office. (Doc. No. 45-5 at 15.) While it would have been preferable for Plaintiffs' counsel to have broken out the time spent for each task, when combined, these distinct tasks could easily occupy 2.80 hours. Overall, Plaintiffs' counsel's billing records contain over 200 individual entries for tasks performed and billed. (Doc. No. 45-5.) Only a small portion are block-billed. In this instance, therefore, Plaintiffs' counsel's practice of block-billing some attorney tasks does not significantly undermine the overall reasonableness of the requested fees. *See Chavez*, 2020 WL 376209, at *3 (declining to fault Plaintiffs' counsel for block-billing because only a small number of block-billed entries exceeded two hours and because the entries were sufficiently detailed).

### F. Settlement Communications

Plaintiffs rely heavily on their attempts to settle the case early in the litigation to justify an award of attorney's fees and costs. In response, Defendant filed a motion to strike any reference to the parties' settlement discussions as protected settlement negotiations. (Doc. No. 46-1.)

Defendant cites no caselaw supporting its argument that courts cannot consider the parties' settlement history in deciding attorney's fees. In fact, courts regularly cite plaintiffs' attempts to settle early in the litigation in deciding the reasonableness of

14

attorney's fees. *See*, *e.g.*, *Campos v. Ford Motor Co.*, No. 17cv2221 AGA (GR), 2020 WL 256125, at *2 (C.D. Cal. Jan. 13, 2020) (faulting plaintiff for not taking defendant's initial settlement offer); *Base*, 2020 WL 363006, at *1; *Goglin*, 4 Cal. App. 5th at 471 (assessing the rejection of a pre-litigation settlement offer). Moreover, in the parties' settlement agreement, Defendant agreed Plaintiffs could disclose the "background" and "negotiation" of the settlement agreement. (Doc. No. 51.)

According to Plaintiffs, on March 13, 2018, they sent a demand letter seeking repurchase of the vehicle and $7,717 in attorney's fees and costs, but Defendant did not respond. (Doc. No. 44-1 at 5.) On June 6, 2018, Plaintiffs sent a second letter attempting to initiate settlement discussions prior to moving forward with discovery, but Defendant did not respond. (*Id.*) On April 29, 2019, after completion of discovery, Defendant made its first settlement offer at a mandatory settlement conference. (*Id.*) At least part of the settlement – the vehicle buy-back – was the same as what Plaintiffs initially demanded. (*Id.* at 6.) Accordingly, Plaintiffs' early attempt to settle the case supports the reasonableness of the fees awarded in this order.

### G. Multiplier

Plaintiffs argue their attorney's fees, as well as the fees charged by paralegals, law clerks, and legal assistants, are entitled to a 0.3 multiplier based on the delay in payment and their demonstrated expertise in litigating this matter. (Doc. No. 44-1 at 24.) Out of the thirty-seven state court cases cited by Plaintiffs purporting to support the reasonableness of Plaintiffs' counsel's fees, only three of those courts approved the application of a multiplier, and none of those cases were decided in this geographic area. (Doc. No. 44-2 a ¶ 58.) The recent cases decided by this court have all declined to apply a multiplier. *Chavez*, 2020 WL 376209, at *3 (rejecting 0.3 multiplier based on the posture and lack of complexity of case); *Hamm*, 2019 WL 3891139, at *4 (rejecting 0.5 multiplier because the case did not involve complexity or novel or difficult questions of law or fact); *Petropoulos*, 2019 WL 2289399, at *4 ("Plaintiffs were not litigating important constitutional rights here. Nor were they representing the public interest. . . . They were

seeking compensation and statutory penalties for a defective Durango."). As noted above, Plaintiffs' counsel do not argue this case involved complexity warranting a multiplier and do not identify anything special about their representation of Plaintiffs in this matter. Plaintiffs' counsel also cite no caselaw supporting the application of a multiplier based on the delay in payment incurred as a result of their own choice to take this case on a contingency basis. Accordingly, no multiplier to the lodestar amount is warranted.

### H. Costs

Plaintiffs argue their attorneys are entitled to reimbursement of $13,766.96 in costs and expenses. (Doc. No. 44-1 at 24.) Defendant argues that Plaintiffs' counsel are not entitled to at least some of their costs under Federal Rule of Civil Procedure 54 and because they failed to submit a bill of costs in violation of Civil Local Rule 54.1. (Doc. No. 45 at 8, 22-23.) Defendant also argues that costs related to personally serving deposition subpoenas, travel to depositions, and expert costs are not recoverable under Local Rule 54.1. (*Id.* at 23-24.)

The Song-Beverly Act specifically allows for the recovery of "a sum equal to the aggregate amount of costs and expenses." CAL. CIV. CODE § 1794(d). Under federal law, however, costs available to the prevailing party are limited to those listed 28 U.S.C. § 1920. Fed. R. Civ. P. 54(d); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). District courts have reached different conclusions as to whether the provision regarding costs and expenses in the Song-Beverly Act is procedural or substantive. *See Base*, 2020 WL 363006, at *7 (finding that "state law governs Plaintiff's request for costs," but listing several cases in the Eastern District finding otherwise); *Johnson*, 2019 WL 3891148, at *4 ("In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases."); *Forouzan v. BMW of N. Am., LLC*, 390 F. Supp. 3d 1184, 1187 (C.D. Cal. 2019) (finding the cost provision to be substantive based on the state legislature's intent); *O'Brien v. FCA US LLC*, No. 17cv4042 JCS, 2019 WL 5295066, at *7 (N.D. Cal. Oct. 18, 2019) (same).

The costs and expenses available to Plaintiffs are not limited by Rule 54(d) or by Local Rule 54.1. The costs and expenses provision in the Song-Beverly Act is substantive for the same reasons as the courts found persuasive in *Base*, *Forouzan*, and *O'Brien*. Additionally, both Rule 54(d) and Local Rule 54.1 are based on an entry of judgment, which has not occurred here. Accordingly, Defendant's argument that certain costs are prohibited by Local Rule 54.1 is not persuasive.

The expenses listed in Plaintiffs' counsel's bills consist mainly of fees related to generating six transcripts and fees for Plaintiffs' expert to inspect the vehicle, draft an expert report, and prepare for a deposition. The expenses also include fees related to filing and serving documents, including ten deposition subpoenas. The other lesser expenses include transportation costs for attending events such as depositions, the vehicle inspection, and the mandatory settlement conference, as well as several meals while traveling.[5] Based on the above, $13,766.96 in costs and expenses is reasonable.

### IV. CONCLUSION

Based on the forgoing, the court decreases Plaintiffs' request for $80,066.50 in attorney's fees by $485 based on the reduction to Mr. Bickel's rate to $575 per hour, and by $15,291 based on the excessive hours reportedly spent pursuing the instant motion. The total amount awarded for attorney's fees is ***$64,290.50***. Additionally, Plaintiffs' request for $8,396 for paralegal/law clerk fees is reduced by $6,276 based on the decrease in the paralegal/law clerk rate from $195 to $100 per hour, as well as a decrease from 42.4 hours to 21.2 hours. The total amount awarded for paralegal/law clerk fees is ***$2,120***. The court therefore **GRANTS** Plaintiffs' motion for attorney's fees and paralegal/law clerk fees in the amount of ***$66,410.50***. The court also **GRANTS** Plaintiffs' motion for ***$13,766.96*** in

---

[5] The only questionable item is $29.74 for a "[m]eal expense incurred during travel for deposition of Plaintiffs' Expert Witness." (Doc. No. 44-3 at 25.) The court will presume this was a meal that included more than one person.

costs and expenses. Plaintiffs' request for $797.50 in legal assistant fees is **DENIED**. Plaintiffs' request for an additional $26,778 based on a 0.3 multiplier is **DENIED**.

IT IS SO ORDERED.

DATED: February 14, 2020

JEFFREY T. MILLER
United States District Judge